CHARLES C. STEVENS *vs.* JOHN SMOKER.

Third Judicial District, New Haven, June Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

In an action in the nature of ejectment the plaintiff introduced certain deeds to prove his claim of title, while the defendant alleged and offered evidence tending to prove that the plaintiff's grantors were ousted of possession when the deeds were executed, and that they were therefore void.   The trial judge charged the jury that the plaintiff had made out a prima facie case, unless the defendant had

shown something, under one or more of his defenses, to defeat such right. *Held* that this statement was unnecessary and was also open to criticism as changing the burden of proof, which remained throughout the case with the plaintiff; but that it could not have harmed the defendant, inasmuch as it must be read in connection with other portions of the charge in which the jury were instructed that the question for them was whether, in view of all the evidence, the plaintiff had established his case, and that the deeds relied upon by him would be void if the jury found that the grantors therein were ousted of possession, as contended by the defendant.

Under a general denial of the plaintiff's allegations of title and possession, the defendant may show that the plaintiff's grantors were ousted of possession when the deeds upon which the plaintiff relies were made, since thereby the deeds are discredited as evidence.

Proof of a chain of deeds relating back to some grantor who, at the time of his conveyance, was owner of the land conveyed, is sufficient to establish a prima facie ownership or title in the last grantee in the chain.

An heir at law takes title by inheritance in the land of his intestate immediately upon the latter's death, and may enter and protect the premises from disseizors, notwithstanding the statutory right (§ 362) of the administrator to possession during the settlement of the estate.

To acquire title by adverse possession the real owner must be ousted of possession and kept out uninterruptedly for fifteen years by the open, visible, and exclusive possession of another, without license or consent of the owner.

With respect to the defendant's claim of adverse possession, the trial court instructed the jury that if they found that the alleged disseizor fenced in the land, they should consider any evidence there might be of conduct on her part indicating whether her occupation of the fenced land was hostile to the claims of every one else, or whether it was subject to the superior rights of another. *Held* that this was not equivalent to an instruction that the possession must be hostile to everybody in order to make it adverse, but merely a statement of the purpose for which such evidence was offered and for which it should be considered by the jury.

It is not essential to the acquisition of a title by adverse possession that the occupant of the land should claim it as his own; but if he does so, and the other elements are present, he acquires title.

A map which included the premises in question and which was taken from the city engineer's office was introduced in evidence by the defendant without objection. This map was said to have been the result of surveys made between 1872 and 1876. To show that it was inaccurate the plaintiff was allowed in rebuttal to introduce a plot and field notes of a survey of the same territory, which were

found in the city engineer's office. These notes were contained in a small book marked "Weld No. 1" but there was no date on the book or on the plot or survey. It appeared that the field notes of all surveys taken by the city engineers were preserved in that office, and that those in question were found in the place where such surveys were kept; also that one Weld was an assistant city engineer from 1872 to 1876 and had charge of a squad of men who surveyed and plotted the section of the city which included the premises in dispute, and that the notes were not in the handwriting of any other person in the engineer's office who had charge of such surveys. *Held* that the evidence of identity was sufficient to warrant the admission of the plot and field notes, and that it was for the jury to say whether the identification was established, and, if not, to give no weight to the evidence.

Ancient public documents coming from proper custody prove themselves.

Argued June 8th—decided July 31st, 1911.

ACTION in the nature of ejectment, brought to the Superior Court in New Haven County and tried to the jury before *Greene, J.;* verdict and judgment for the plaintiff, and appeal by the defendant for alleged errors in the charge and rulings of the court. *No error.*

*Walter J. Walsh,* for the defendant (appellant).

*John Elliott* and *Frank S. Bishop,* for the plaintiff (appellee).

THAYER, J. To one of the two pieces of land in controversy the plaintiff claimed title by inheritance, as one of the heirs at law of his mother who died intestate in 1900; to the other he claimed to have acquired title by deed from one Hull, who had acquired it by deed from the plaintiff's mother. He claimed to have proved that his mother had acquired title to both parcels from the trustees in bankruptcy of her husband, Robert Stevens, who, prior to his bankruptcy, had owned both, as well as other adjoining land, and who, in 1866, had conveyed a piece of the adjoining land to one Catherine

Howard, from whose grantee the defendant acquired it.   The first parcel is the southerly end of a narrow strip of land known as Stevens lane, extending southerly from Congress Avenue in New Haven.   The other is a small triangular piece of land west of and adjoining the first piece.   The defendant in his answer denied the plaintiff's allegations of title and possession, and set up as separate defenses that the first tract was a public highway, and that the defendant and his grantors had acquired title to the other tract by adverse possession.

The court having called the jury's attention to the deeds from Robert Stevens' trustees in bankruptcy to Mrs. Stevens, conveying both tracts, and to those from Mrs. Stevens to Mrs. Hull, and from Mrs. Hull to the plaintiff, of the second tract, and to the fact that no administrator had been appointed on Mrs. Stevens' estate, said to them: "So far as title by deed and inheritance is concerned, the plaintiff has therefore made out a title, to both parcels claimed, sufficient to maintain an action unless and until the defendant has by evidence under one or more of his defenses shown something to defeat such right. . . . You may therefore consider that the plaintiff has made out a prima facie case; that is, such a state of facts as would entitle him to recover if the defendant had offered no evidence to sustain his defenses."

The defendant excepts to this: in the first place, as changing the burden of proof and imposing upon him the burden of overthrowing the title thus established.   Read by itself, it is open to this criticism.   The court was speaking after the case was closed and all the evidence was in, and the question for the jury was not whether at the close of the plaintiff's case in chief he had made out a prima facie case, but whether upon the entire evidence he had made out a case.   The defendant had offered

evidence tending to show title by adverse possession in Mrs. Howard, and that she was in possession of the land in dispute, claiming title, at the time Mrs. Stevens received her deed from the husband's trustees in bankruptcy, and at the time she conveyed the parcel to Mrs. Hull. This evidence could have been offered without pleading the special defense. Practice Book (1908) p. 250, § 160. Its effect was to discredit the plaintiff's deeds as pieces of evidence, because, if true, those deeds were void; the grantors being at the time ousted of possession. While, therefore, the deeds, together with proof of original ownership in Robert Stevens, might have withstood a motion for a nonsuit when the case in chief was closed, that circumstance was of no consequence after the defendant had introduced evidence tending to prove that the deeds were void. The burden of proof remained with the plaintiff throughout the case. But the court was here speaking of the plaintiff's claim only. In other portions of the charge the jury were told that a deed by a party ousted of possession, unless made to the person in possession, was void, and were also told that the question for them was whether, in view of all the evidence, the plaintiff had established his case, and that if they should find that any of the deeds introduced in evidence by the plaintiff purported to convey title to any portion of land of which the grantor was ousted by the entry and possession of another, such deed was void as to such land. In view of these instructions, we think the defendant could not have been harmed by the unnecessary statement that the deeds made out a prima facie case.

It is claimed that the instruction that the deeds made out a prima facie case was wrong, because ownership of land cannot be made out upon a paper title alone. It is true that a mere chain of deeds alone will not establish ownership in land. *Foote* v. *Brown*, 81 Conn.

218, 226, 70 Atl. 699. It must connect back to some one as a source of title who, at the time of his conveyance, was owner of the land conveyed. The finding shows that the plaintiff offered evidence to show ownership in Robert Stevens, in 1866, of the land here in question, and deeds from him or his trustees in bankruptcy to Mrs. Stevens. The defendant also traced his title to the Howard land adjoining that in controversy, to Robert Stevens. The original ownership of Robert Stevens in all the land adjoining Stevens lane on both sides, and in the lane itself, seems not to have been questioned by either party upon the trial. The claim of the defendant was that at the time of the claimed conveyance from Robert's estate to Mrs. Stevens, and from Mrs. Stevens to Mrs. Hull, the grantors were ousted by the possession of Mrs. Howard. Upon the plaintiff's claim, of which alone the court was speaking, the deeds showed a prima facie title as to the triangular parcel. No administrator of Mrs. Stevens' estate had been appointed. Upon her death her real estate, she having died intestate, vested at once in her heirs at law, of whom the plaintiff was one. The facts showed, therefore, a prima facie case of title by inheritance in the plaintiff as to the portion of the lane in dispute. The fact that an administrator, had one been appointed, would, under the statute (§ 362), be entitled to possession of the real estate during the settlement of the estate, did not prevent the plaintiff, as an heir at law, from entering and protecting the premises from disseizors.

The jury were correctly told that the essential elements of an adverse possession sufficient to create a title to the land in the adverse possessor are that the owner shall be ousted of possession and kept out uninterruptedly for a period of fifteen years, by an open, visible, and exclusive possession by the adverse possessor, without the license or consent of the owner.

They were afterward told that if they found that Mrs. Howard fenced in the land, and recalled any evidence of any conduct on her part indicating whether her occupation of the land fenced in was hostile to the claims of every one else, or whether it was subject to the superior rights of another, they should consider such evidence upon the question whether she acquired title by adverse possession. This is not open to the defendant's criticism that it is an instruction that the possession must be hostile to everybody to make it adverse. It was an instruction as to the purpose for which certain evidence, claimed by the parties to be in the case, should be considered by the jury, and was a proper instruction. The same is also true of the instruction excepted to in the sixth reason of appeal. The jury were told that if Mrs. Howard had, for fifteen years or more, continuously and without interruption, an open, visible, and exclusive possession, without license or consent of the owner of the tract, including both parcels claimed, treating the land as her own, she acquired title as against the owner. It is true, as claimed by the defendant, that the possessor need not hold the land claiming it as his own. *Johnson* v. *Gorham,* 38 Conn. 513, 522. But if he does so hold it, claiming it as his own, he acquires title. The charge was favorable, rather than unfavorable, to the defendant in this respect.

The reasons of appeal, so far as they are founded upon the court's refusal to charge as requested, require no consideration, as they were fully covered by the charge as given, except the seventh, which supported the defendant's claim that the plaintiff could not recover the first described piece of land, because the right of possession to that was in the administrator of Mrs. Stevens. This, as already stated, is answered by the fact that there is no administrator.

A map produced from the city engineer's office, and showing, as claimed, the location of Stevens lane and boundary lines of the proprietors' lands adjoining it, was introduced in evidence by the defendant without objection. The map was said to have been made from surveys made between 1872 and 1876. In rebuttal and to show inaccuracy in the map, the plaintiff was allowed, against objection, to introduce a plot and field notes of a survey of the same territory, produced, also, from the city engineer's office, and claimed to have been made between 1872 and 1876 by one Weld, an assistant city engineer. As the map was introduced without objection, and no question is raised as to the admissibility of the field notes if properly identified, no question is presented as to the admissibility of these public documents to prove the boundary lines of land belonging to private owners. The defendant's sole complaint now is that the field notes were admitted without proper identification. They were contained in a small book marked "Weld No. 1." There was no date on the book or on the plot and survey offered. Evidence was offered tending to prove that the field notes of all surveys taken by the city engineers were preserved in the city engineer's office; that those in question were found in the place where such surveys are kept; that a Mr. Weld, now dead, was an assistant city engineer from 1872 to 1876, when he left the office; that he had charge of a squad of men engaged in surveying and plotting the section of the city including the Stevens lane section; and that the notes were not in the handwriting of any other person in the engineer's office having charge of such surveys. The witness who produced the notes (an assistant city engineer now in the office), had seen Weld's handwriting, but was not sufficiently familiar with it to testify that the notes were made by him; but testified that he believed them to be in Weld's hand-

writing.   Being an ancient public document and coming from proper custody, the notes would have proved themselves had they borne date.   *Hamilton* v. *Smith*, 74 Conn. 374, 379, 50 Atl. 884.   As it contained no date, evidence was necessary to establish its date, and thus identify it as the plot and notes of the survey upon which it had been testified the map was based.   We think that the identification was sufficient to warrant the reception of the evidence.   It was for the jury to say whether the identification was established, and, if not, to give no weight to the evidence.

There is no error.

In this opinion the other judges concurred.