[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 9767
The instant proceeding, according to the claims of counsel, is an action to quiet title in and to a certain piece of parcel of land as shown and designated as "Map Showing Revised Lot Line Between Lots 104 105 Deer Run Shores Section A Sherman, Connecticut Scale 1" = 20' March 1989 certified `substantially correct as a class A-2 survey' prepared by the office of K. W. Rogers Assoc. Richard W. Dibble LLS #8158" to which map reference may be had for a more particular description of the premises.
The community known as Deer Run Shores is a residential/resort community located on the westerly side of Lake Candlewood so-called. Some of the building lots in that community are water-front but the majority of those building lots are interior lots. However, all have water rights to the lake. The chronology of this particular litigation is somewhat significant. On September 14, 1972, the plaintiffs' predecessors in title, Phillip A. and Geleta F. Ventrella, purchased Lot No. 105 and constructed their home thereon which they occupied in March of 1973. That home obtained its water from an artesian well which was located and drilled during the period of construction. The casing or wellhead protruded approximately one foot out of the ground and was secured or covered by a metal cap measuring approximately ten (10") inches in diameter. That cap is painted what might be called a reddish color with areas of visible rust. The court specifically notes that the paint has a very dull finish as opposed to any sheen such as is ordinarily found in enamel paints.[1] In the fall of 1973, Ventrella purchased small pine trees approximately five (5) feet tall for the sum of five ($5.00) dollars each and planted them around the wellhead area. These trees experienced a healthy growth and in 1989 and 1990 had become very full at the base and had grown to a height approximating twelve to fifteen (12 to 15') feet.[2] The fullness of the base of the trees is clearly displayed in those exhibits and is of substantial significance. Ventrella in his testimony conceded that the trees at some point obscured and prevented the observation of the well head from the roadway.
He subsequently conveyed his title to the premises to the defendants, Dennis E. Banks and Claudia G. Banks, by warranty deed dated August 2, 1977, which deed is recorded in Volume 37, CT Page 9768 pages 822 and 823 of the Sherman Land Records.[3] From and after that date, at all times relevant herein, the Banks have been the record owners and occupants of the property in issue.
The plaintiffs are the owners of Lots 104 and 103 in section A of Deer Run Shores which they purchased by warranty deed in 1973. They frequently visited their property and observed it as they drove by on the roadway known as Candle View Drive. They deny ever seeing or being able to observe the wellhead on their land. There is no question that the disputed parking area, however, was openly, notoriously and continuously visible from the time it was expropriated by Ventrella. As the plaintiffs made preparations to build on their property in 1988, they commissioned a survey which was accomplished by Richard W. Dibble LLS #8158 of the office of K. W. Rogers Assoc., and a map was prepared and presented in March of 1989 by Mr. Dibble. Despite efforts by the defendants to create such an inference, there is no evidence whatsoever that any survey of the property in issue ever challenged or relocated the common boundary line between Lots 104 and 105 as originally prepared by Kenneth W. Rogers.[4] The Dibble survey does show a different common boundary line which was a proposal rather than a contradiction of the original Rogers' efforts. Dibble, in preparing the survey, discovered the encroachment of the defendants' well on the property in his field work. However, he did not see the wellhead immediately and nearly fell over it as it was obscured by evergreen trees close to the ground. His crew had found it almost impossible to walk the original boundary line as a result of the fir trees and the other trees and brush that had grown up along its course. In addition, all surveyor's points on Lot 105 were gone when Dibble and his field group performed their services.
One of the defense witnesses testified that she was able to see the wellhead from Candle View Drive "probably around 1975." She also stated that "if you walked onto the driveway you could see it before the trees grew." It is against this factual predicate that the issue of the ownership of the land upon which the parking area stands, together with the wellhead, is presented to the court.
There is no question whatsoever that record title to each of the disputed pieces is clearly vested in the plaintiffs. The defendants, if they are to prevail, have recognized a necessity of pleading the doctrine of adverse possession and of CT Page 9769 proving it by clear and positive proof. Schulz v. Syvertsen,219 Conn. 81, 91; Sands Associates v. Rios 6 Conn. App. 84, 87. The general rule concerning title by adverse possession is clearly expressed in Stevens v. Smoker, 84 Conn. 569, 574,80 A. 788: "`The essential elements of an adverse possession sufficient to create a title to the land in the adverse possessor are that the owner shall be ousted of possession and kept out uninterruptedly for a period of fifteen years, by an open, visible, and exclusive possession by the adverse possessor, without the license or consent of the owner. `The open, notorious, uninterrupted, continuous, undisputed, peaceable and adverse possession of land for the requisite period under a claim of right will give title.' [Citation omitted.] `The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but by clear and positive proof.' Huntington v. Whaley, 29 Conn. 391.'" Robinson v. Myers, 156 Conn. 510, 517; Hurlburt v. Bussemey, 101 Conn. 406, 412; see Ruick v. Twarkins, 171 Conn. 149, 155. There is some question about the utilization of circumstantial evidence to demonstrate clear and positive proof. The Appellate Court has endorsed the circumstantial evidence concept in Woycik v. Woycik, 13 Conn. App. 518,522 where it declined to read Huntington v. Whaley,29 Conn. 391 as mandating that adverse possession "is not to be made out by inference. . . ." This imprimatur on the use of circumstantial evidence has received some support from our Supreme Court in Wildwood Associates, Ltd. v. Esposito,211 Conn. 36, 42-43. While reiterating the abhorrance of inferences, the court is quick to note that "[a]dverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally or logically necessarily inconsistent with that conclusion.'" Obviously, the issue for any trial court turns on the quality of its findings.
"The requirement that an adverse possession be `notorious' in the sense of `being or constituting something that is commonly known: well known' (Webster, Third New International Dictionary) is obviously to give actual notice to an owner that a claim contrary to his ownership is being asserted or to lay a foundation for a finding of constructive notice." Robinson v. Myers, supra, 518; citing therein Pepe v. Aceto, 119 Conn. 282,287; Schroeder v. Taylor, 104 Conn. 596, 605.
CT Page 9770 This court in its quest for guidance in the resolution of this problem discovers great assistance in several cases which deal primarily with the issue of easements by prescription or adverse possession. While this case deals specifically with ownership, the rubrics from those cases are most enlightening and extremely persuasive. Perhaps the most significant single element for the claimant to establish is that of notice of the party he seeks to oust of his claim. The claim must be so clearly presented against the then owner's interest as to give that owner actual knowledge or sufficient factual data to impute knowledge of the act of the claimant, i.e., constructive knowledge. The party against whom an ouster is sought is under no legal duty to use reasonable diligence to discover the fact of a concealed taking. It is for the party who seeks to establish that taking to exercise his claimed right so openly as to give the owner knowledge and a full opportunity to assert his own rights. Exley v. Gallivan, 96 Conn. 676, 679. That holding found acceptance and repetition in Ricci v. Naples,108 Conn. 19, 25, and again in Klein v. DeRosa, 137 Conn. 586, 589
which expanded that principle by including the statement to the effect that whether such a right has been acquired presents primarily a question of fact for the trier after the nature and character of the use and the surrounding circumstances have been considered, citing Horowitz v. F. E. Spencer Co.,132 Conn. 373, 377; West v. Lewis Oyster Co., 99 Conn. 55, 67; Bradley Fish Co. v. Dudley, 37 Conn. 136, 147. Another rather significant observation in Klein v. DeRosa, supra, relates to the existence of physical conditions which may or may not be enough to put the person against whom the ouster is claimed on notice.
Each of these cases appears to require an ad hoc evaluation of the facts and circumstances unique to each. This court is satisfied that the credible evidence establishes that the wellhead and cap are clearly located upon the plaintiffs' land. It is also satisfied that initially when the wellhead was installed at the completion of the drilling operation and capped that it was indeed visible. However, shortly thereafter, there is no question in this court's mind that the planting of the fir trees by Ventrella partially obscured its discovery. The fullness of growth at the base and the thickness and size of the trees increased over the years to produce a visual barrier, a consistent obstruction to discovery. The plaintiffs testified that they never were able to see it from the roadway and the law requires no detailed CT Page 9771 inspection of one's property to determine the existence of a concealed use which serves as the basis of such a claim. See Exley v. Gallivan, supra, 679. The surveyor indicated the severe overgrowth at the time he and his field party accomplished their services and the extreme difficulty in actually seeing the wellhead and cap. Ventrella conceded the fact that the wellhead and cap with the planting of the fir trees in the early days may well have obscured its visibility from the roadway. One defense witness clearly said that the wellhead and cap were visible from the roadway in the earlier years. However, nothing in the testimony that this court has heard, and certainly not in the credible testimony that it has accepted, is it able to find that the wellhead and cap were openly, notoriously and continuously visible to reasonable observation by anyone for a full and consistent period of fifteen years.
The defendants have cut and thinned out the lower portion of one of the fir trees immediately obscuring the wellhead and cover. An examination of the Defendants' Exhibits 6 and 7 establishes this. Later exhibits produced a clearly recognizable wellhead and cap which earlier exhibits shield and obscure from view.
It is appropriate here for the court to discuss a particular exhibit which shows the wellhead and cap very clearly. The defendants deny enhancing its appearance for purposes of photographing it and producing the exhibit in issue. They indicate a space among the trees with light pouring through according to their interpretation of that particular exhibit. The court raised the issue of enhancement of the wellhead and cover in its own questions directed to the defendant. The defendant denied enhancing that wellhead and cover by any means whatsoever, insisting that it was merely the reflective properties of the metallic cover itself. This court has previously noted that the color of the wellhead cap and the quality of the paint covering it with the areas of rust evident. It finds as a fact that that cover is incapable of reflecting to the degree necessary for the presentation contained in the Defendants' Exhibit 10.
It is significant to note that that denial under ordinary conditions does not permit the court to reach an opposite conclusion. "It is settled that evidence, although uncontradicted, need not be believed. [Citations omitted.] CT Page 9772 Where, however, the trier of fact disbelieves testimony of a witness, it is not entitled to conclude that the opposite is true." Anderson v. Anderson, 191 Conn. 46, 55-56; Novak v. Anderson, 178 Conn. 506-508; Martino v. Grace-New Haven Community Hospital, 146 Conn. 735, 736; see also DeLaurentis v. New Haven, 220 Conn. 225, 259. Those cases and their holding are clearly distinguishable from this proceeding. This court finds from examination from the Defendants' Exhibit 10 that there has indeed been an enhancement of that well cover by the addition of a substance not unlike aluminum foil which causes to be immediately and readily recognizable by anyone and thus a distortion of its actual appearance.
The court finds that the plaintiff has indeed established that they do own the property upon which the wellhead is located and that the defendant cannot prevail on its claim of adverse possession against that parcel of land. However, with respect to the area where the parking lot is located, there is no question whatsoever in this court's mind that it has existed openly, notoriously and continuously for a period in excess of fifteen years, and the claim of title by adverse possession has unmistakenly ripened in the defendants. Therefore, this court finds that the defendants do indeed own the parking area which they claim by virtue of the doctrine of adverse possession. It was the plaintiffs' contention that the use had indeed been expanded during the fifteen period which is critical to the doctrine. However, there is no evidence whatsoever other than the bald statement to that effect. Therefore, judgment may enter quieting title to the parcel upon which the wellhead and cover stand in the plaintiffs, and quieting title to the parcel upon which the parking area stands in the defendants.
MORAGHAN, J.