[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 3967
This is essentially an action to settle title to a parcel land. In the first two counts of their complaint, the plaintiffs claim title to a certain parcel of land by record title or alternatively by adverse possession. In the third count the plaintiffs claim that the defendants have trespassed upon and caused damage to said land. The defendants have entered a denial as to each count of the land.
"A person who claims title by deed is claiming that he has good record title which entitles him, in an action to quiet title, to a judgment of ownership. Loewenberg v. Wallace,147 Conn. 689, 698, 166 A.2d 150 (1960). Conversely, a person who claims title by adverse possession is claiming that although he does not have record title, his proof of possession which is adverse, open, notorious and continuous for the entire statutory period entitles him, in an action to quiet title, to a judgment of ownership. Ruick v. Twarkins, 171 Conn. 149, 155,367 A.2d 1380 (1976); Schlough v. Ruley, 1 Conn. App. 119, 120,468 A.2d 1272 (1983).". "The trial court must first determine in which party record title lies, and then, if necessary, determine whether adverse possession has divested the record owner of his title." Id., 108. Marrin v. Spearow, 35 Conn. App. 398 (1994).
These issues were tried to the court on January 8, 1998. After carefully considering and weighing the evidence presented during the course of the trial, as well as assessing the testimony and credibility of the witnesses, the court finds the following facts to have been proven.
RECORD TITLE
In 1934, a parcel of land located in the town of Coventry, Connecticut, containing approximately 77.84 acres and shown on a map entitled "Map of land formally owned by William P. Robinson Estate, Coventry, Conn., April 1934 Scale 1" equals 100'", hereafter referred to as "the 1934 map, was conveyed by warrantee deed from Olive Robinson, et al to Albert Katzong. Included within the 77.84 acres were parcels of land designated as Parcels A, B, C, D, E, and F. Part of a town road referred to as "the old highway" was located on Parcels B and E. Title to Parcels B and E were not warranted in the transfer from Robinson, to Katzong; however, within the body of the deed the grantors expressly conveyed all of their rights and title in Parcels B and E to CT Page 3968 Katzung. Parcel E, a 77 acre parcel of land, is the subject of this action.
Over the years the individual parcels of this large tract of land were conveyed to various individuals. In 1942 Parcel F was transferred by warrantee deed from Katzung to Isobel Robertson, and in 1946 Parcel G was created out of the Western portion of Parcel A and was thereafter transferred by warrantee deed from Katzung to Isobel Robertson.[1] In 1945 Katzung quitclaimed to his wife Esther Katzung all of his remaining interests and title to Parcels A, B, C, D, E, and F, excluding land to be conveyed to one Leo Ducharme. This deed was not recorded until 1963. Parcel D was conveyed to Leo and Gabrielle Ducharme by warrantee deed in 1949.
In 1951 Isobel Robertson conveyed Parcels F and G to Theodore and Mary Gozdz by warrantee deed. Mary Gozdz died in 1970 leaving her interest in Parcels F and G to her husband, Theodore Gozdz. Thereafter, Theodore Gozdz quitclaimed Parcels G and F to himself and Joan Volkert. Upon the death of Theodore Gozdz in 1974 title vested in Joan Volkert, and upon her death in 1982 title to Parcels F and G were conveyed by certificate of devise to Theodore and William Volkert. In 1983 Theodore transferred his interest to William who then conveyed his interest in Parcels F and G, to himself and his wife Denise. William and Denise are the plaintiffs in this action.
In 1983, Esther Katzung quitclaimed her remaining interests in parcels A, B, C, D, E, and F to Melvin and Virginia Pierson, reserving a life interest in the property to herself. In a subsequent quitclaim deed of 1989 Katzung released that life interest. Marvin and Virginia Pierson are the defendants in this action.
A complicating factor in this case involves the fact that a part of the old highway was situated on Parcel E. Although the old highway is shown on the 1934 map as passing through Parcel E, no evidence was produced concerning when, how, and by what governmental entity the old highway was dedicated and established. The only evidence presented to the court concerning the relationship of any governmental entity to the old highway involves a Coventry town meeting of March 1, 1934 which was called for the purpose of deciding whether to discontinue the highway. The minutes of the meeting are somewhat ambiguous as they reflect the call of the meeting, but the actual motion CT Page 3969 adopted by the voters is not clearly set forth in the minutes.[2]
The only rational and logical reading of the minutes is that the motion voted on and approved was to discontinue the highway. However, even if the minutes are defective and incomplete and the road was not legally discontinued by the town in 1934, the evidence is clear and Parcel E has not been used by the Town of Coventry as a highway or for any other purpose over the past sixty years. Neither party is claiming that the Town of Coventry has any interest in the property nor that the old highway continues to exist. The Town of Coventry was given notice of this action but did not seek to participate in it. The court finds that even if the old highway was not legally discontinued, it was abandoned. Nonuse of a highway for a considerable period of time is prima facie evidence of abandonment. Beardsley v. French, 7 Conn. 125 (1828); Newkirk v. Sherwood, 89 Conn. 598 (1915). Where discontinuance or abandonment of a highway by the selectmen is acquiesced in by the public for over sixty years, the highway is presumed one which selectmen could discontinue or abandon, although no record of layout or evidence of dedication shown. Brownell v. Palmer,22 Conn. 107 (1852). As additional evidence of disuse, a State of Connecticut Highway Department map of the Town of Coventry Roads, revised to 1950, does not show the existence of what was the old highway.
The rule of law governing discontinued or abandoned highways was addressed by our Supreme Court in Luf v. Southbury,188 Conn. 336 (1982) "Our law has long ago settled the property rights that in here in a public highway before its abandonment or discontinuance. Under our law, such a highway creates no interests in fee, the presumption being that the landowners whose lands abut the highway continue to be the owners of the soil to the middle of the highway." . . . "Instead of creating a fee, the taking of the highway creates two easements: the public easement of travel, that permits the general traveling public to pass over the highway at will, and the private easement of access, that permits landowners who abut the highway to have access to the highway and to the connecting system of public roads." (Emphasis added; internal citations omitted). at 341-342. The words "continued" and "presumption" are significant in this case.
The decision in Luf v. Southbury, supra, presumes that the landowners abutting the highway easement owned the land over which the easement was created. In situations in which that is CT Page 3970 correct it would logically follow that once the easement has been discontinued or abandoned the land upon which the easement existed should revert to the abutting owners or their successors in title. In this case, however, that presumption is rebutted by the evidence presented to the court proving that in 1934 title to all of the land relating to his case, including Parcel E and the land abutting Parcel E, was owned by Olive Robinson, et al. Only Parcels F and G were conveyed to the plaintiff's predecessors in title. Whatever rights, interest and title Robinson, et al had in Parcel E were conveyed to the defendants predecessors in title. Consequently, when the old highway was discontinued or abandoned the land upon which the road easement existed reverted to the title owners of Parcel E, not the abutting landowners.
The plaintiffs argue that the defendants rely solely upon quit-claim deeds in support of their claim of ownership of Parcel E. "A deed entitled `Quitclaim Deed', when duly executed, has the force and effect of a conveyance to the releasee of all the releasor's right, title and interest in and to the property described therein except as otherwise limited therein, but without any covenants of title. A `Quitclaim Deed' may be used as a release of a mortgage, attachment, judgment lien or any other interest in real property." Section 47-36f, Connecticut General Statutes.
It is the strength of the plaintiff's title, not the weakness of the defendant's title, upon which the plaintiff's must rely. Koennicke v. Maiorano, 43 Conn. App. 9, (1996). The fact of the matter is that the only evidence presented to the court concerning title ownership of Parcel E over the past 63 years are the quitclaim deeds in which each grantor conveyed to each grantee whatever interest, right and title he or she had in Parcel E. Contrary to paragraph 4 in the First Count of the plaintiff's complaint, none of those deeds conveyed any interest in Parcel E to the plaintiffs.
It is clear to the court that the plaintiffs do not now and have never had record title to Parcel E. Even the plaintiff, he stated that he believed that the Piersons have record title to that parcel of land.
The court finds that the plaintiffs have not sustained their burden of proof as to their claim of record title in Parcel E. Accordingly, judgement shall enter in favor of the defendants as to the first count of the complaint. As to the defendant's CT Page 3971 counterclaim, the court finds by a fair preponderance of the evidence that the defendants, William and Denise Pierson, hold record title to Parcel E. Accordingly, judgement shall enter for the defendants on the counterclaim.
ADVERSE POSSESSION
Parcel E, as shown on the maps and in the photographs, is a 77 acre somewhat rectangular piece of land bordered on the South by Parcels F and G, on the West by Parcel B and on the North by Parcel D. The Eastern side of Parcel E intersects with Cedar Swamp Ext., a town road. Much of this land appears to be wooded and/or overgrown. The plaintiff's family has resided in the farm house located on Parcel F since approximately 1951. Until the mid 1970's they used a portion of the Western 1/2 of Parcel E for haying and to stake out cows, no signs or fences were ever erected, and no efforts were ever made to prohibit anyone from entering or using the property until the mid 1990's.
The plaintiff, William Volkert, Jr., moved into the house on Parcel F in 1959 or 1960 and has lived there continuously, except for one year in 1981. Denise Volkert moved onto the property approximately 15 and 1/2 years ago. The Volkerts operated a dairy farm on the Parcel F property until 1975 and then rented out some of the farm land for haying and growing feed corn. A portion of the Western 1/2 of Parcel E was used for staking out cows and for growing hay while the Volkerts were operating the farm. During the past few years a small part of Parcel E in front of the house and adjacent to the driveway has been maintained as lawn. At the request of the plaintiffs, a neighbor, Alphonse Giglio, mowed a portion of the Western part of Parcel E on occasion over the past several years to keep it from becoming overgrown. According to William Truman, who owns and resides on Parcel D, the Volkerts have used only a small portion of Parcel E over the years, as most of the land is wetland and is not usable. The court finds Mr. Truman to be unbiased and credible. William Volkert admitted that he has not maintained all of parcel E as some of the land is wetland and overgrown. The court finds that the plaintiffs have not used or possessed most of the Eastern 1/2 of Parcel E in any significant manner.
There is credible evidence that the defendants, their daughter and some of her friends rode horses down the old highway through Parcels B and E on numerous occasions from 1964 through the 1970's, and the Melvin Pierson has walked the Parcel E land CT Page 3972 on occasion since then. William Volkert admitted that he saw the Piersons on Parcel E on occasion and also observed people riding horses on the property until 1974. He claims not to have seen anyone on the property after that time. Theodore Volkert, who lived on the Parcel F farm until 1977, also saw people riding horses on Parcel E from time to time.
"Where title is claimed by adverse possession, the burden of proof is on the claimant. Loewenberg v. Wallace, 147 Conn. 689,699, 166 A.2d 150 (1960). The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. Stevens v. Smoker,84 Conn. 569, 574, 80 A. 788 (1911). The use is not exclusive if the adverse user merely shares dominion over the property with other users. Short Beach Cottage Owners Improvement Assn. v. Stratford,154 Conn. 194, 199, 224 A.2d 532 (1966). Such a possession is not to be made out by inference, but by clear and positive proof. Robinson v. Myers, 156 Conn. 510, 517, 244 A.2d 385 (1968). In the final analysis, whether possession is adverse is a question of fact for the trier. Padula v. Padula, 138 Conn. 102, 110,82 A.2d 362 (1951)." Whitney v. Turmel, 180 Conn. 147, 148,429 A.2d 826 (1980) "Clear and positive proof" embodies the same substantive standard as "clear and convincing proof." Wildwood Associates, Ltd. v. Esposito, 211 Conn. 36, 42, 557 A.2d 1241
(1989).
The court finds that while there is evidence that the plaintiffs have used portions of the Western 1/2 of Parcel E for home and farm functions over the years, they have produced neither clear nor convincing proof that such use or possession of this land was adverse, open, exclusive, notorious or continuous for the entire statutory period. The plaintiffs have never had Parcel E surveyed, they have not maintained any of the boundaries, i.e. stone walls, of the land, and they have never paid taxes on Parcel E. Additionally, the plaintiffs did not put up any signs, fences, or notices, or make any effort to keep people from entering onto the property until they were notified in 1996 that the defendants were making claim of ownership to Parcel E. Finally, the plaintiffs have never erected any structure on or made any significant improvements to Parcel E. See: Meshberg v. Bridgeport City Trust Co., 1 Conn. App. 10
(1983). Accordingly, as to the second count of the complaint, the court finds that the plaintiffs have not sustained their burden CT Page 3973 of proof as to their claim of title by adverse possession of Parcel E.
TRESPASS
As to the third count of the complaint, since the plaintiffs have not proven that they are the owners of Parcel E, either by record title or adverse possession, they cannot sustain their claim of trespass upon and damage to said land.
PRESCRIPTIVE EASEMENT
"It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint. . . . Lundberg v. Kovacs, 172 Conn. 229, 232,374 A.2d 201 (1977). However, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Beaudoin v. Town Oil Co., 207 Conn. 575, 587-89, 542 A.2d 1125 (1988); Fuessenich v. DiNardo, 195 Conn. 144, 150-51, 487 A.2d 514 (1985). As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Internal citations omitted.) Normand Josef Enterprises, Inc. v. Connecticut National Bank,230 Conn. 486, 496, 646 A.2d 1289 (1994). See: O'Brien v. Coburn,39 Conn. App. 143, 147-148 (1995).
In this case, the second count of the complaint involves a claim of title to a 77 acre piece of land known as Parcel E by adverse possession. The court has found that the plaintiffs have not proven that claim by clear and convincing evidence. However, paragraph 5 of the second count of the plaintiff's complaint alleges that Parcel E has been used by the plaintiffs and their predecessors in title as a means of passage continuously since 1951. The court finds by a fair preponderance of the evidence that the driveway which extends from the plaintiff's house on Parcel F, across the Western part of Parcel E, and intersects with Cedar Swamp Ext., has in fact been used continuously by the plaintiffs for at least fifteen years as a means of ingress and egress to and from their residence. The maps introduced into evidence show that the driveway was in existence in 1934 and 1946, and the photographs introduced into evidence show the driveway as it exists today. In the absence of other evidence, it is reasonable for the court to infer that the location of the CT Page 3974 current driveway is the same as it was in 1934. Finally, there is testimony from the plaintiffs that their driveway crosses Parcel E.
This court finds that the pleadings are sufficient to have put the defendants on notice that the plaintiffs were claiming rights to the driveway. A consideration of the doctrine of Prescriptive Easement under the facts and circumstances of this case by a Court of Equity certainly should not surprise, and will not prejudice, the opposing party.
General Statutes § 47-37 defines an easement by prescription. It provides that "[n]o person may acquire a right of way or any other easement from, in, on or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years." "[A] prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right." Gioielli v. Mallard Cove Condominium Assn., Inc., 37 Conn. App. 822, 829, 658 A.2d 134 (1995). A prescriptive easement must be proved by a fair preponderance of the evidence. Reynolds v. Soffer, 190 Conn. 184, 188, 459 A.2d 1027 (1983); Public Storage v. Eliot Street Ltd. Partnership, 20 Conn. App. 380,385, 567 A.2d 389 (1989). "Whether the requirements for such a right have been met in a particular case presents a question for the trier of facts after the nature and character of the use and the surrounding circumstances have been considered." Krohner v. Seyburt Associates Ltd. Partnership, 20 Conn. App. 298, 301,566 A.2d 995 (1989), cert. denied, 213 Conn. 814, 569 A.2d 550
(1990). See: Crandall v. Gould, 46 Conn. App. 164, 167-168 (1997).
The court finds by a fair preponderance of the evidence that the plaintiffs have used the driveway in an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right. Accordingly, the plaintiffs have acquired a right of way over the driveway from their house to Cedar Swamp Ext. by prescriptive easement.
Judgement shall enter for the plaintiffs creating a right of way by prescriptive easement over the driveway as shown on Defendant's Exhibits 1, 2, and 10. Judgement shall enter for the defendants as to the three counts in the complaint as well as the counterclaim, subject to the plaintiff's easement. The plaintiffs are enjoined from interfering with the defendants right to use or travel upon Parcel E. CT Page 3975
The defendants seek damages from the plaintiffs in the amount of $2.00 per day as the result of being denied access to Parcel E by the plaintiffs during the pendency of this action. The court finds this amount to be arbitrary and without basis in fact. The defendants have not proven actual damages. Consequently, nominal damages in the amount of $10.00 is awarded to the defendants. No costs are to be awarded to either party.
Per order of the court at Rockville, Connecticut on this 19th day of March, 1998.
Terence A. Sullivan, J. Superior Court Judge