[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff brings this action pursuant to Title 47 of the Connecticut General Statutes seeking to quiet and settle title to certain real property located in the South Britain section of Southbury. Connecticut. Title to that property is also claimed by the defendant. The real property in question is shown as three contiguous parcels on Defendant's Exhibit E, General Location Survey. They are parcel X which has an area of 1,985 square feet; Parcel A with an area of 0.048 acres; and Parcel B with an area of 0.573 acres.
The plaintiff claims that these three parcels lie within Platt Park which it owns. There is no conflict between the parties as to any other realty.
Plaintiff in its four count complaint alleges that it holds. good marketable title to the land in question; that the defendant has slandered its title; that the defendant has wrongfully placed a cloud on its title, and that, in the alternative, it acquired title from the defendant by adverse possession. In response, defendant filed her answer joining issue.
Before finding the facts of the matter, the court sets out certain legal tenants governing the claims brought by the plaintiff.
In an action to quiet title, the plaintiff must prevail on the strength of his own title and not on the weakness of his adversary's. Mt. MaumeePartnership v. Peet, 40 Conn. App. 752; Marquis v. Drost, 155 Conn. 317;Lake Garda Improvement Association v. Battistoni, 155 Conn. 287; Ball v.Town of Branford, 142 Conn. 13. While title to a particular tract of land, in the absence of any evidence to the contrary, draws possession CT Page 6278 with it, general possession of the tract will not avail as regards any particular piece of land unless it is satisfactorily shown to have been a part of that tract. As applied to the instant case, the defendant's denial of plaintiff's complaint, places the burden on the plaintiff to prove the correct boundary line and its ownership of the tract in dispute. Pepe v.Acceto, 119 Conn. 282, 286; Texas Co. v. Slosberg, 112 Conn. 357, 358;Ferrie v. Sperry, 85 Conn. 337.
The court finds the following proven by a fair preponderance of the credible evidence presented during a two-day bench trial of the matter.
On June 1, 1852, Ambrose Ryon conveyed to Henry Bradley by warranty deed a 3/4 acre parcel of land located in the South Britain section of Southbury, Connecticut, bordered northerly and easterly by land of Mitchell N. Canfield, southerly by land of Gamaliel Benham and westerly by highway. (Defendant's Exhibit F).
Thereafter, on March 14, 1853, Mitchell M. Canfield conveyed to Henry Bradley by warranty deed a 1/2 acre (more or less) parcel of land, adjoining the parcel described above, and bounded northerly and easterly by remaining other land of Mitchell M. Canfield, southerly by land of Gamaliel Benham and by the parcel described above and westerly by the parcel described above and highway. (Defendant's Exhibit G). As indicated in their respective descriptions, each of the parcels have frontage on a highway and the 1/2 acre parcel adjoins other land of Bradley.
On June 13, 1868, Henry Bradley, as lessor, granted to Calvin Lines, as lessee, the right to take water from a spring on Bradley's land located about fifteen rods (about 247-1/2 feet) easterly of Bradley's dwelling house. Said lease grants " . . . the right and privilege of taking the waters from said spring in a lead pipe of the dimentions (sic) of three eights (sic) of an inch . . .". (Defendant's Exhibit H). The location of said spring about 15 rods easterly of Bradley's dwelling house places it where it is depicted in Defendant's Exhibit E and well beyond the boundary of Defendant's land as depicted in the Somers' survey of Platt Park. (Plaintiff's Exhibit 14). After his death, on May 28, 1898, his heirs conveyed to Carrie B. Manville six parcels of land in the Town of Southbury totaling 31-1/4 acres, more or less. The second parcel described in said deed is the same 3/4 acre parcel conveyed to Henry Bradley by Ambrose Ryon in 1852 and the third parcel is the same A acre parcel conveyed to Henry Bradley by Mitchell M. Canfield in 1853. Further, the deed from Bradley's heirs to Carrie B. Manville recites that the grant of these six parcels " . . . is free from all encumbrances whatsoever except whatever rights owned by the adjoining owner of the second above described piece of land as to rights of water and pipes, digging the same over said second piece. . .". (Plaintiff's Exhibit CT Page 6279 16).
On October 25, 1909, Carrie B. Manville granted a lease to George W. Mitchell to ". . . lay and maintain as far as my land extends a half inch pipe which shall be placed in the spring now furnishing his and my dwelling with water . . . This lease in the place of the three eighths inch privilege now granted and owned by him by lease of Henry Bradley to Calvin Lines as per record in the year 1868 . . .". (Defendant's Exhibit I). During her life and after acquiring the six parcels contained in Plaintiff's Exhibit 16, Carrie B. Manville made two conveyances of land by warranty deed. The first was a conveyance of 17-1/2 acres more or less to one Cass (Plaintiff's Exhibit 19) and the second was a conveyance of 17 acres more or less to one Sperry (Plaintiff's Exhibit 18). Neither conveyance to Cass or Sperry recites in its boundary descriptions that either of these parcels was bounded by "other land of Carrie B. Manville" or "by remaining land of Carrie B. Manville", or "by my own land". The court concludes from the facts found that it is reasonable to infer that neither of the conveyances to Cass or Sperry included the second or third parcels in Plaintiff's Exhibit 16 since the boundary description recited therein made no reference to being bounded by Manville's own land or remaining land or other land of the grantor.
On the date of her death, November 27, 1947, Carrie B. Manville still owned the real property described as the second and third pieces in plaintiff's Exhibit 16 and owned no other real estate. At the time of death, her real property vested in her sole heir at law, Allen S. Bryant. Foote v. Brown, 81 Conn. 218, 224; Stevens v. Smoker, 84 Conn. 569,574.
On November 29, 1947 she filed an inventory with the Woodbury Probate Court for the Manville estate which listed a single parcel of real estate of 1/2-acre more or less bounded on three sides by land of Eunice Mitchell and southerly by Flood Bridge Road and which was subject to a water (right) as recorded in Volume 26, Page 147 of the Southbury Land Records. Thereafter, on August 19, 1948, the Woodbury Probate Court issued a Certificate of Distribution from the Manville estate distributing the real property listed in the inventory to Allen S. Bryant, Manville's sole heir at law. On August 17, 1953, Allen S. Bryant conveyed to Catherine L. McCarthy, individually, the entire parcel which had been distributed to him from the Manville estate, and on July 11, 1983, Catherine L. McCarthy conveyed to the defendant the entire parcel which she purchased from Allen S. Bryant in 1953.
The inventory filed by Catherine McCarthy in the Manville estate, the Certificate of Distribution to Allen S. Bryant, the deed from Bryant to McCarthy and the deed from McCarthy to the defendant all contained the CT Page 6280 same description and listed the water riqht in Volume 26 at Page 147 as an encumbrance thereon. The water right listed as an encumbrance in all of said conveyances is the same as that originally granted by Henry Bradley to Calvin Lines in 1868 to take water from a spring located about 247-1/2 feet easterly of Bradley's then-existing dwelling house.
After defendant purchased her land from McCarthy in 1983, she became aware of plaintiff's claim of ownership of a portion of that same property. The plaintiff's claim arises out of its acquisition of two parcels of land comprising what is known as Platt Park.
Prior to October 1973, the plaintiff engaged Stuart Somers, a registered land surveyor, to prepare a survey of that land. Before drafting the survey, Somers first consulted the assessor's records to obtain deed reference and determine abutting owners, he then contacted certain owners and walked their boundaries with them and finally, he searched the titles of the parcel to be surveyed and the abutting parcels to determine boundary conflicts, if any. Somers title search of the McCarthy parcel commenced with the Manville estate in 1947. As a result of that search he thought that there was, possible, some problem with distribution out of her estate . . ." (Defendant's Exhibit B), and would have considered different boundaries between the McCarthy parcel and Platt Park if a corrective deed purporting to transfer any remaining property out of the Manville estate to McCarthy had been of record at the time he prepared the Platt Park survey, but that was not the case.
Somers, while surveying in the field, located a spring within a fenced in area on land sharing a common boundary with what he concluded was the 1/2 acre McCarthy parcel. However, its interesting to note that the only spring located on either the parcel which plaintiff claims or the fenced in parcel, to the rear of defendant's house, which both parties claim, is shown on Defendant's Exhibit E, well within the boundaries of the land claimed by the plaintiff.
On February 14, 1990, as a result of the boundary issues between plaintiff and defendant, Catherine McCarthy, as Administratrix, submitted under oath, to the Woodbury Probate Court, an Application to Sell or Mortgage Real Property from the estate of Carrie B. Manville. Said application, which was prepared by an Attorney retained by the defendant, recites that all land owned by Manville at her death was distributed to Allen S. Bryan, her sole heir at law but that said property was improperly described in the original estate inventory and that the Certificate of Distribution from Manville's estate also misdescribed the property, as did all subsequent deeds in the chain of title. On the same date, Catherine McCarthy submitted an Amended Inventory of the real property in the Manville estate to the Woodbury Probate Court and on CT Page 6281 February 27, 1990, the Woodbury Probate Court entered a decree authorizing her as Administratrix of the Manville estate to transfer (not sell) to Claudette J. Negri the original parcel conveyed from Ambrose Ryon to Henry Bradley in 1852.
Certainly the real property owned by Manville at her death consisted of two parcels containing approximately 1-1/4 acres and that property is subject to certain spring or water rights.
Using a composite description, the Administratrix attempted to describe the two parcels as one in the decedent's inventory without success. The court finds that the description which first appears in the original inventory of the Manville estate does not describe either of the two parcels originally conveyed to Henry Bradley in 1852 and 1853 and to Manville in 1898, but rather describes those two parcels together, as one parcel, by virtue of the boundary references to Eunice Mitchell as the adjoining owner on three sides. Further, the court finds that the Application to Sell real Estate filed by Catherine McCarthy was not due to the discovery of land which had been left out of the Manville estate inventory, but due to an error in the description in the land included in said inventory and that the Administratrix's Deed from Catherine McCarthy to the defendant did not convey any real estate, but merely corrected the description of land that had already been conveyed.
After purchasing her property from Catherine McCarthy, the defendant posted "No Trespassing" signs on trees and fence posts along the entire perimeter of the 1-1/4 acres she claims to own. As a result, the public has not used any portion of the fenced in area located to the rear of her house and shown as Parcel B on Defendant's Exhibit E, and no employee or agent of the plaintiff has maintained or exercised any dominion or control over it. However, public access to Platt Park has not been denied by plaintiff's actions because the hiking trail from Library Road leading to the Park, runs parallel to the northwesterly fence line of said Parcel B.
When title is claimed by adverse possession, the burden of proof is on the claimant. Loewenberg v. Wallace, 147 Conn. 689, 699. The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of claimant without license or consent of the owner. Stevens v. Smoker, 84 Conn. 569, 574. Such a possession is not to be made out by inference, but by clear and positive proof, Robinson v. Myers, 156 Conn. 510, 517, and such has not been made out in the instant case.
In addition to claiming, in the alternative, title by adverse CT Page 6282 possession, plaintiff also claims that the defendant recognized and acquiesced in the location of its boundary lines as shown on Somers' survey of the Platt property, Plaintiff's Exhibit 14.
The court in Delbuono v. Brown Boat Works, Inc., 45 Conn. App. 524,532, quoting from 69 A.L.R. 1431, said that "The doctrine of recognition of and acquiescence in a boundary line is upheld by many authorities. it is sometimes referred to as acquiescence in or as a practical location of, or as an implied agreement as, a boundary."
"Whether there was an implied agreement presents a question of fact essentially dependent upon the question of intention, to be determined in light of all of the significant surrounding circumstances." Martel v.Malone, 138 Conn. 385, 390-391. The court in Lowndes v. Wicks, 69 Conn. 15,30, defined the Doctrine of Equitable Acquiescence as "Quiescence under such circumstances that assent may be reasonably inferred from it. . . ."
In support of its claim, plaintiff contends that two Class A-2 surveys filed by the defendant in the Town of Southbury "clearly shows that defendant does not own the `neck' shaped Park entrance nor any land to the rear of the one-half acre parcel known as 52 Library Road."
The two maps referred to by plaintiff are: "Map Prepared For Claudette J. Negri Southbury, Connecticut Area = 46,985 sq. ft. = 1.08 ac, dated October 25, 1989," and filed in the Southbury's Town Clerks Office on November 1, 1989, as Map #2783, (Plaintiff's Exhibit 12) and "Boundary Survey and House Asbuilt prepared for Claudette J. Bleidner Library Road South Britain, CT Scale 1" = 20 ft., 7/15/90" and filed in the Southbury Zoning Office Files. (Plaintiff's Exhibit 26). Map #2788 dated October 25, 1989, shows the defendant's claim of 1.08 acres which includes the land lying "to the rear of the 1/2 acre parcel known as 52 Library Rd." and also indicates that the Town of Southbury was to quit claim to the defendant any interest it may have had in or to said parcel. Consequently, this map does not support plaintiff's exclusive claim to the land lying to the rear of the 1/2 acre parcel. At best, it is ambiguous, indicating that both parties make claim to the same real property but showing title in neither. This map does support the proposition that defendant recognized and acquiesced in the plaintiff's claim to the "neck" shaped Park entrance, however, since no part of that area was included within the boundaries of the land claimed by the defendant, as shown on said map. Rather, the "neck" shaped parcel providing access to the Park is shown on the map as serving a part of "Other Land of the Town of Southbury".
The Map entitled "Boundary Survey and House Asbuilt Prepared For Claudette J. Bleidner Library Road South Britain, CT Scale 1" = 20 ft., CT Page 6283 7/15/90" was filed with the zoning office of Southbury to show the house "as built" by the defendant and, among other things, its proximity to side, front and rear lot lines and to wet land areas. It was not filed on the Southbury land records. And while it also purports to be a boundary survey, the surveyor sought his boundary line reference from the Platt Property Maps (Platt Park) prepared by Stuart Somers.
Further, reflecting on the unreliability of the boundary lines as depicted, the surveyor indicates the following on the map, "Note: Vol. 26 Pg. 147, Water Rights, Carrie Manville to George Mitchell spring right, 1/2" pipe, 10/25/1909, crossing Negri Property to South Side of Library Road" and "Vol. 22 Pg. 290 Spring Rights, 3/4 and 1/2 acre Piece Presumed Spring Right" and "statutory affidavit by Catherine L. McCarthy, Feb. 14, 1990 Paragraph 8, Spring Right From Spring to Home of Carrie B. Manville. Home is Presumed To Be Old Foundation Hole Shown On Map." While it would follow from the recitation on the map of the correct deeds evidencing the spring and water rights in conjunction with the reference to the 1/2 and 3/4 acre pieces that this information should have triggered further searching by the surveyor, in order to determine the actual location of the spring and the boundaries of defendant's property, it did not. Consequently, the map is of little value in that regard, however, it does buttress plaintiff's claim to the title of the irregularly shaped parcel of land referred to in its brief as the "Neck" shaped park entrance off of Library Road. The map provides uncontroverted evidence that defendant recognized and acquiesced in the location of a portion of plaintiff's boundary line because it shows that her driveway was relocated so as to eliminate its encroachment into the "neck" shaped park entrance area. (Being a part of Parcel A on Defendant's Exhibit E)
The only other piece or parcel of land in controversy, that both plaintiff and defendant claim to own and that the court has not yet considered in this opinion, is parcel "X" as shown and depicted on the defendant's General Location Survey. (Defendant's Exhibit E). Such consideration can be summary, however, in as much as it is clear from a fair preponderance of the credible evidence that title to same is in the plaintiff.
Now therefore, in accordance with the foregoing, judgment will enter settling and quieting title in the plaintiff to Parcel X as shown on General Location Survey, Defendant's Exhibit E; further, judgment will enter settling and quieting title in the plaintiff to the following described irregularly shaped piece or parcel of land.
Commencing at a concrete monument located at the south westerly corner of Parcel A as shown on General Location Survey, (Defendant's Exhibit E), thence running N 33° 39' 36" W 13.87' to a wood post with wire CT Page 6284 (Barway Post), thence turning and running N 59° 19' 28" E 185.39' to a concrete monument marking the north easterly most terminus of the parcel, thence turning and running S 48° 17' 42" W 47.06' to a drill hole in stone foundation remains, thence running S 51° 12' 04" W 35.53' to an iron pin, thence running S 59° 05' 12" W 51.62' to a 3/4" iron bar, thence running S 59° 45' 20" W 51.69' to the point or place of beginning. Said irregularly shaped parcel runs to a point on its north easterly terminus and is bounded on its three sides as follows, southerly by Library Road, so called, northerly by other land of the plaintiff (shown and depicted as Parcel X on Defendant's Exhibit E) and southerly by other land of the defendant (shown and depicted as parcel A on Defendant's Exhibit E).
Judgment on the remaining claims of the plaintiff may enter for the defendant.
Judgment will enter without costs to either party.
So ordered,
THOMAS G. WEST, J.