Plaintiffs brought this action in five counts, sounding in trespass and conversion, and seeking to quiet title pursuant to Conn. Gen. Stat. Sec. 47-31 to a parcel of real estate in Harwinton which they claim under a deed from Hattie D. Blakeslee dated March 19, 1959 and, in part, by adverse possession.
The evidence at trial established that plaintiffs acquired title to 2.5 acres by the deed of Hattie Blakeslee in 1959. That deed describes the southerly boundary as commencing at "the Town Line Marker between the Towns of Thomaston and Harwinton" and running "Easterly on the Town Line" 350 feet to a point marked by a stake. The court finds that the testimony of Curtiss B. Smith and plaintiffs' Exhibit 5 is more credible in terms of the land conveyed by the deed of Blakeslee to the plaintiffs. The easterly boundary extends northward 460 feet and then west, southwest and south along the line of the then new layout of the highway, now known as Hill Road, Route 222. Plaintiffs have proved by a preponderance of the evidence that they have the record title to that portion of the land in dispute.
Plaintiffs claim title by adverse possession to the land lying CT Page 5584 north of the property conveyed by deed. Plaintiffs must prove by clear and convincing evidence that they ousted the true owner of that property from possession of the property and kept that owner out of possession for 15 years, by an open, visible, and exclusive possession, without the consent of the owner. LaPre v. Nibo Films, Ltd., 10 Conn. App. 669, 671 (1987) and cases cited therein. Such possession may not be proved by inference, but must be established by clear and positive proof. Roche v. Fairfield,186 Conn. 490, 493 (1982) citing Robinson and Myers, 156 Conn. 510,517 (1968). Mr. Hudson testified that he had the house in which he lives moved from South Road because of the Thomaston Dam in 1959. In the spring of 1961, he and Mr. Blakeslee put fencing along the southern and eastern boundaries of the property. The fence on the east ran up to Hill Road. Plaintiffs grazed cattle on the property at least through mid-1972. After Mr. Hudson sold the cattle, he continued to mow the grass to the north of his house. In 1974 and 1975, Peter Hock, with Mr. Hudson's permission, mowed the grass in return for the hay. In the mid-70's Mr. Hudson planted Christmas trees and sold them. Defendants' predecessor in title, Raymond Guzauskas, removed a section of the fence along the plaintiffs' easterly boundary to the north and replaced it with a wooden fence after Mr. Hudson objected. Mr. Guzauskas never attempted to use any of the property to the west of the fence. The Bradshaws acquired their property from the Guzauskases in September, 1976. Mr. Beaton, who lived in the house formerly occupied by the defendants between 1963 and mid-1972, testified that Mr. Hudson mowed up to the fence line and grazed cattle on both sides of the driveway which was then only a dirt drive. Mr. Beaton rented the house from Curtis Blakeslee who had walked Hudson's boundaries with him and purchased the wire used for the fences. Even defendant acknowledged that, before 1989 and the completion of Mr. Lepore's survey, he assumed the property west of the row of hemlocks belonged to the Hudsons. Between 1976 when Mr. Bradshaw took title and 1979, he did see Mr. Hudson cutting grass two or three times with a tractor. From 1960 until at least September, 1976 plaintiffs' possession of the land north of the dotted line on Pl. Exh. 5 was open, visible and exclusive. Plaintiffs, by clear and convincing evidence, have proven title to that property by adverse possession.
In January, 1992, defendants hired an excavating contractor to bulldoze and excavate for a driveway across plaintiffs' property. That work was done without plaintiffs' consent on January 25, 1992. On January 31, an ex parte temporary injunction issued to prevent further work or trespasses on plaintiffs' property. The evidence establishes that Mr. Weeks, the contractor, did not remove soil from the site, but did remove some trees and brush and that the topsoil was in a pile separate from other soil. Plaintiffs also claim that defendants converted topsoil, trees and part CT Page 5585 of a fence. Plaintiffs have not proved their conversion claim, but the negligent trespass was proved. Based on the testimony, the plaintiffs are entitled to recover damages to restore their property which the court finds to be $6,500.00. Plaintiffs also claim emotional distress resulting from the trespass. Mr. Hudson testified, credibly, that the trespass was stressful for his wife and for him. For that, they are each entitled to nominal damages of $1.00.
Plaintiffs also claim damages for the cutting of trees on their property pursuant to Conn. Gen. Stat. Sec. 52-560. Since the defendants caused the trees to be cut in the mistaken belief that they were on land owned by them, plaintiffs are entitled to recover no more than the reasonable value of those trees. The proper measure of damages is the market value of the trees for timber or fuel or the diminution in the market value of plaintiffs' real property caused by the cutting of the trees. See Canton Village Construction, Inc. v. Huntington, 8 Conn. App. 144, 147 (1986). Plaintiffs' expert witness, David Johnson, testified as to the landscaping value of a twenty-two-foot healthy white pine uprooted by defendants' agent, and twelve white spruce trees, about 15 years old, between eight and ten feet high. The difficulty with his values is that "landscaping" values, in which replacement value is used as a guide, is not evidence of diminution in the market value of the real estate. Plaintiffs offered no other evidence of damages occasioned by the destruction of the trees.
Plaintiffs are therefore entitled to judgment quieting title in them to the property as shown on Pl. Exh. 5 and to damages on the first count of $6,502.00, plus costs.