[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Introduction
The case of William Zagray, et al vs. Murray Ostrager, et al, involves a dispute as to the status of approximately 66 acres in CT Page 11652 the Town of Hebron.
William Zagray, age 78 and Murray Ostrager, age 76 have lived in Hebron, as have their families, since the 1930s and before. Both men are self reliant, principled and self made men. They own acreage on all sides of the disputed piece and are passionate about the issues before the court.
The case at bar, reminds the court of the Robert Frost Poem, "Stopping by the Woods on a Snowy Evening."
 Whose woods these are, I think I know. His house is in the village though; He will not see me stopping here To watch his woods fill up with snow.
The Frost poem causes the court to ponder:
 Whose woods are these, a query, I wish to correctly find, So while the litigants may display less than geniality, The court hopes that its decision will, to this case now bring, finality.
 I
The plaintiffs have filed a four count Amended Complaint dated April 24, 1997 wherein they seek to quiet title to a disputed parcel of land in Hebron near its boundary with Colchester. The disputed property contains approximately 66 acres.
The property which is in dispute in this case is described in a "Joint Exhibit" dated May 20, 1999 and it is agreed by the litigants that the land described therein is in fact the property in dispute. It is noted that the decision of this court as to the status of the property relates to the property described in said "Joint Exhibit".
The first count asserts that the plaintiffs are the owners of the property in question by deed. In the alternative the plaintiffs, in the second count, claim that they have acquired the property in question by adverse possession. The third count alleges that Murray Ostrager and Seymour Ostrager trespassed on CT Page 11653 the property in question and have had trees cut down and removed. The fourth count claims that the cutting and removal of the trees was in violation of Connecticut General Statutes § 52-560.
The defendants have denied the material allegations of the complaint and have alleged that they have marketable record title to the land.
Therefore, this is an action to quiet and settle title. The plaintiffs allege record title and title by adverse possession. The defendant claims that they have record title.
Where one seeks to quiet title pursuant to § 47-31
Connecticut General Statutes, the court is required to first try and determine in which party record title lies and then determine the issue of adverse possession. Clark v. Drska,1 Conn. App. 481.
Therefore, the court will endeavor to determine if record title has been established by credible evidence and then how the doctrine of adverse possession may affect the title.
 II
In support of their claim, the plaintiffs offered the testimony of Francis D'Onofrio, a licensed land surveyor in Connecticut. Mr. D'Onofrio examined the property on foot with William Zagray in April of 1995 and without Mr. Zagray and on one visit he was accompanied by three hunters Russell Blow, George Champlin and Ronald Bromley who verified boundary lines for Mr. D'Onofrio. The visit made by Mr. D'Onofrio was about two years after Mr. D'Onofrio rendered an examination of deeds in the Zagray and Ostrager chains of title.
In connection with visiting the property Mr. D'Onofrio testified from photos taken on the property i.e. exhibit V #1-#39. The photos show among other things iron pins, stakes, fences, stone walls, piles of stones, a railroad bed, posted signs and no trespassing signs. Photo #17 shows the claimed eastern boundary; photos # 18, 19 20 depict land along the south side of Crouch Road; #20 shows a dirt road going in a southerly direction; # 23 shows two posted signs, with the upper sign having the name Zagray on it (this is also reflected on exhibits Q[1] and Q[2]). CT Page 11654
Mr. D'Onofrio examined the records in the town hall of Hebron. This involved a search of the chain of title for Zagray and Ostrager. The title search and review of the deeds involved examination of the following deeds:
 A-1 Conservator's deed from estate of Stanley Zagray, William Zagray, conservator to William Zagray and Harry Zagray dated January 4, 1992, and recorded in volume 149, page 653 of the Hebron land records.
 A-2 Warranty deed from Stephen Zagray and Agnes Zagray to William Zagray, Harry Zagray and Stanley Zagray dated August 18, 1942, and recorded in volume 42, page 448 of the Hebron land records.
 A-3 Warranty deed from Bernard Wallach to Stephen Zagray and Agnes Zagray dated November 2, 1916, and recorded in volume 27, page 521 of the Hebron land records.
 A-4 Warranty deed from Isaac Kolishman and Z. Kolishman to Barnet Wallach dated August 7, 1911, and recorded in volume 27, page 345 of the Hebron land records.
 A-5 Warranty deed from Julia A. Clark to Isaac Kolishman, Z. Kolishman and K. Goldstein dated June 5, 1909, and recorded in volume 27, page 268 of the Hebron land records. (Atty. Richard Johnson, who testified for the defendants stated that the description in this deed is ambiguous in that there is an erroneous reference to Charles Strong).
 A-6 Warranty deed from James C. Foote to Julia A. Clark dated April 4, 1893, and recorded in volume 22, page 909 of the Hebron land records.
 B-1 Quitclaim deed from Eva Ostrager to Seymour Ostrager dated August 19, 1976, and recorded in volume 91, page 999 of the Hebron land records.
 B-2 Warranty deed from Murray Ostrager to Seymour Ostrager and Eva Ostrager dated November 29, 1967, and recorded in volume 63, page 66 of the Hebron land records.
B-3 Quitclaim deed from Town of Hebron to Murray Ostrager dated September 16, 1950 and recorded in volume 45, page 522 of the Hebron land records. CT Page 11655
 B-4 Certificate of Foreclosure from Eva Ostrager to Town of Hebron dated March 21, 1944, and recorded in volume 40, page 553 of the Hebron land records.
 B-5 Warranty deed from L.B. Callahan to Eva Ostrager dated August 27, 1934, and recorded in volume 31, page 300 of the Hebron land records.
 B-6 Warranty deed from Daniel Brown and Celia Brown to L.B. Callahan dated November 30, 1927, and recorded in volume 32, page 389 of the Hebron land records.
 B-7 Warranty deed from Henry Erlich to Daniel Brown dated February 3, 1920, and recorded in volume 30, page 461 of the Hebron land records.
 B-8 Warranty deed from Daniel Brown to Henry Erlich dated May 3, 1917, and recorded in volume 30, page 313 of the Hebron land records.
 B-9 Warranty deed from J. Oaklander to Daniel Brown dated April 12, 1913, and recorded in volume 28, page 492 of the Hebron land records.
 B-10 Warranty deed from Robert O. Clark to J. Oaklander dated December 31, 1912, and recorded in volume 27, page 378 of the Hebron land records.
Proof of title is usually by deeds which forms a chain of title. The plaintiffs' title comes from a warranty deed from Stephen and Agnes Zagray (parents of the plaintiffs) to William Zagray, Harry Zagray and Stanley Zagray dated August 18, 1942 and recorded in Volume 42 page 448, which deed indicates 56 acres. The deed into Stephen and Agnes Zagray was from Bernard Wallach dated November 12, 1916 and recorded in Volume 27 page 521, which indicates 96 acres.
The plaintiffs also presented the testimony of Robert Musson, who is the Assessor of Hebron since 1991. Mr. Musson stated that the field cards for the plaintiffs' property, exhibit G inclusive indicates the following:
1969: 138 acres plus 30 acres; 1973: 138 acres plus 30 acres; CT Page 11656 1978: cards show 14.2 acres owner unknown; 1983: 138 acres plus 30 acres and 14.2 acres owner unknown; 1992: the 14.2 acres were assigned to plaintiff thus giving him 182.2 acres and 1993: plaintiff was designated 72 acres, 30 acres and 14.2 for a total of 116.2 acres.
Mr. Musson indicated that the 182.2 was an estimate, however, in 1993, Mr. Musson reduced the acreage to 116.2 acres based on the Kaye survey. Prior to 1993, the Zagrays paid taxes on the disputed property based on a map that the Zagrays filed with their P.A. 490 forest land application. Also in 1993, the assessor, assessed the property in question to the defendants, this was based on the Kaye survey they filed.
Mr. Musson also indicated that while he was the assessor the plaintiffs never questioned the defendant's survey to him. Further the defendant's survey was used by the tax assessor in preparing the tax maps for the Town. The defendant's have been paying taxes based on said survey. The court finds that the Town of Hebron via the assessor's office, deems the defendants to be the parties responsible for the taxes on the disputed property.
In their effort to establish record title, the defendant's offered the testimony of Richard Johnson. Mr. Johnson is a practicing attorney with a practice specializing in title searching. Mr. Johnson indicated that to establish marketable record title, a root title must be found dating back forty years. Mr. Johnson's search went back to 1770, which was the Colonial Commission grant.
Attorney Johnson examined the land records in the town hall in Hebron. He testified as to the chain of title for the property in question and the adjacent property in order to determine title. Attorney Johnson's search was more thorough and extensive than that rendered by Mr. D'Onofrio. The court finds that the conclusion of Attorney Johnson as to marketable title to the disputed property to be credible and persuasive. An outline of his determination of title is summarized in defendant's exhibits 52 and 57. Said outlines are titled "Chain of Title Piece north of Turner Lot" and "chain of Title Turner Lot."
Exhibit 52 lists the following deeds:
Deed Type: Report of Committee of the General Assembly CT Page 11657 Vol. 5 pg. 640 Set to heirs of Samuel Waters Date of Execution: 10-29-1770 Date Recorded: 12-12-1770
Deed Type: Quit Claim Vol. 5 Pg. 622 Grantor: Adam Waters Grantee: Joseph Waters, Amos Owen Eunice Owen Date of Execution: 9-6-1773 Date Recorded: 9-6-1773
Deed Type: Warranty Vol. 5 Pg. 610 Grantor: Amos Owen Eunice Owen David Owen Grantee: Obadiah Stark Date of Execution: 9-16-1772 Date Recorded: 9-26-1772
Deed Type: Warranty Vol. 6 Pg. 169 Grantor: Obadiah Stark Grantee: Diah Stark Date of Execution: 7-4-1777 Date Recorded: 1-7-1779
Deed Type: Warranty Vol. 6 Pgs. 405-406 Grantor: Diah Stark Grantee: Christopher Thomas Crouch Date of Execution: 4-3-1780 Date Recorded: 4-3-1780
Deed Type: Executor's Deed Vol. 10 Pg. 88 Grantor: Estate of Thomas Crouch Grantee: Josephus Lovett Russell Smith Date of Execution: 9-24-1801 Recorded: 10-24-1801
Deed Type: Warranty Vol. 12 Pg. 40 Grantor: Josephus Lovett Grantee: Ambrose Strong Date of Execution: 3-3-1812 Date Recorded: 3-2-1812
Deed Type: Warranty Vol. 15 Pg. 235 Grantor: Ambrose Strong Grantee: Hazael Gott, Junr Date of Execution: 4-1-1818 Date Recorded: 4-30-1820
Deed Type: Warranty Vol. 22 Pg. 418 Grantor: Hazael Gott Grantee: Frank H. Gott Date of Execution: 6-27-1871 Date Recorded: 6-29-1871
Deed Type: Quit Claim Vol. 25 Pg. 115 CT Page 11658 Grantor: Wellington S. Gott Grantee: other Gott heirs Date of Execution: 10-6-1882 Date Recorded: 10-8-1882
Deed Type: Warranty Vol. 28 Pg. 130 Grantor: Gott heirs Grantee: R. O. Clark Date of Execution: 2-2-09 Date Recorded: 2-4-09
Deed Type: Warranty Vol. 27 Pg. 378 Grantor: R. O. Clark Grantee: Oaklander Date of Execution: 12-13-12 Date Recorded: 1-4-13
Deed Type: Warranty Vol. 28 Pg. 492 Grantor: Oaklander Grantee: Daniel Brown Date of Execution: 4-12-13 Date Recorded: 5-12-13
Deed Type: Warranty Vol. 30 Pg. 313 Grantor: Daniel Brown Grantee: Henry Erlich Date of Execution: 5-3-17 Date Recorded: 5-11-17
Deed Type: Warranty Vol. 30 Pg. 461 Grantor: Henry Erlich Grantee: Daniel Brown Date of Execution: 2-3-20 Date Recorded: 3-13-20 [Attorney Johnson testified that this deed described the property as the "Gott Farm" and contains 260 acres]
Deed Type: Warranty Vol. 32 Pg. 389 Grantor: Daniel Brown and Celia Brown Grantee: L. B. Callahan Date of Execution: 11-30-27 Date Recorded: 1-4-28 [Same property as in Volume 30 Page 461]
Deed Type: Warranty Vol. 31 Pg. 300 Grantor: L. B. Callahan Grantee: Eva Ostrager Date of Execution: 8-27-34 Date Recorded: 9-13-32 [Same property as in Volume 31 Page 300]
Deed Type: Foreclosure Vol. 40 Pg. 553 Grantor: Eva Ostrager CT Page 11659 Grantee: Town of Hebron Date of Execution: 2-15-44 Date Recorded: 3-21-44
Deed Type: Quit Claim Vol. 45 Pg. 522 Grantor: Town of Hebron Grantee: Murray Ostrager Date of Execution: 9-16-50 Date Recorded: 9-23-50
Deed Type: Warranty Vol. 63 Pg. 66 Grantor: Murray Ostrager Grantee: 1/2 interest to Seymour Ostrager Eva Ostrager surv. Date of Execution: 11-29-67 Date Recorded: 5-21-68
Exhibit 57 lists the following deeds:
Deed Type: Report of Committee of the General Assembly Vol. 5 pg. 640 Set to heirs and Samuel Waters Date of Execution: 10-29-1770 Date Recorded: 12-12-70
Deed Type: Quit Claim Vol. 5 Pg. 622 Grantor: Adam Waters Grantee: Joseph Waters, Amos Owen Eunice Owen Date of Execution: 9-6-1773 Date Recorded: 9-6-1773
Deed Type: Warranty Vol. 9 Pg. 121 Grantor: Joseph Waters Grantee: Anson Gillett Date of Execution: 11-25-1797 Date Recorded: 11-25-1797
Deed Type: Warranty Vol. 16. Pg. 99 Grantor: Anson Gillett Grantee: John Turner Date of Execution: 2-11-1833 Date Recorded: 3-12-1833
Deed Type: Warranty Vol. 16 Pg. 147 Grantor: John Turner Grantee: Henry J. Strong Date of Execution: 12-2-1834 Date Recorded: 12-3-1834
Deed Type: Warranty Vol. 19 Pg. 115 Grantor: Henry J. Strong Grantee: William Albert Foote Date of Execution: 1-14-1847 Date Recorded: 4-6-1847 CT Page 11660
Deed Type: Warranty Vol. 20 Pg. 40 Grantor: William Foote Grantee: 1/2 int. to Albert Foote Date of Execution: 2-5-1853 Date Recorded: 2-5-1853
Deed Type: Warranty Vol. 22 Pg. 896 Grantor: Lottie E. Brown Grantee: 1/2 interest to Henry A. Spaford Date of Execution: 3-23-1894 Recorded: 4-30-1894
Deed Type: Warranty Vol. 22 Pg. 897 Grantor: Henry A. Spafford Grantee: 1/2 interest to Julia A. Clarke Date of Execution: 3-23-1894 Recorded: 4-30-1894
Deed Type: Warranty Vol. 22 Pg. 909 Grantor: James C. Foote Grantee: 1/2 interest to Mrs. Julia A. Clarke Date of Execution: 4-4-1893 Recorded: 2-21-1895
Deed Type: Warranty Vol. 27 Pg. 268 Grantor: Julia A. Clarke Grantee: Kolishman, Goldstein Kolishman Date of Execution: 6-5-09 Date Recorded: 6-14-09
Deed Type: QuitClaim Vol. 25 Pg. 652 Grantor: Goldstein Grantee: I. Z. Kalishman Date of Execution: 12-13-09 Date Recorded: 12-2-11
Deed Type: Warranty Vol. 27 Pg. 345 Grantor: I. Z. Kolishman Grantee: Barnet Wallach Date of Execution: 8-7-11 Date Recorded: 9-11-11
Deed Type: Warranty Vol. 27 Pg. 521 Grantor: Barnet Wallach Grantee: Stephen Agnes Zagray Date of Execution: 11-2-16 Date Recorded: 1-24-19
Exhibit 62 is entitled "Chain of Title" "Zargerwood Piece". This claim of title is property to the east of the property in question. Mr. Johnson testified that the search of the property to the east was needed to verify the eastern boundary line of the lane in question. CT Page 11661
Exhibit 62 lists the following deeds:
Deed Type: Warranty Vol. 10 Pg. 58 Grantor: Russell Smith Grantee: Asa Strong Date of Execution: 1-27-1801 Recorded: 1-27-1801
Deed Type: Warranty Vol. 12 Pg. 105 Grantor: Uzziel Foote Grantee: Asa Strong Date of Execution: 9-22-1812 Date Recorded: 12-24-1813
Deed Type: Colchester Probate Will Vol. 12 Pg. 495 Grantor: Will of Asa Strong Grantee: Hannah Strong, Mary Strong Aaron Strong Date of Execution: 9-10-1855 Date Recorded: 4-12-1859
Deed Type: Quit Claim (Colchester) Vol. 27 Pg. 362 Grantor: Hannah Wilcox Grantee: Aaron Strong Date of Execution: 6-20-1860 Date Recorded: 6-21-1860
Deed Type: Quit Claim (Colchester) Vol. 27 Pg. 361 Grantor: Mary Strong Grantee: Aaron Strong Date of Execution: 6-20-1860 Date Recorded: 6-21-1860
Deed Type: Warranty Vol. 22 Pg. 481 Grantor: Aaron Strong Grantee: William E. Strong Date of Execution: 4-22-1867 Date Recorded: 4-22-1867
Deed Type: lis pendens Vol. 30 Pg. 269 Grantor: Est. William E. Strong, John V. Reynolds, Administrator and George H. Strong Grantee: Norwich Savings Society Date of Execution: 10-21-16 Recorded: 10-21-16
Deed Type: Cert. of Foreclosure Vol. 30 Pg. 319 Grantor: Est. of William E. Strong George W. Strong Grantee: Norwich Savings Society Date of Execution: 6-7-1917 Date Recorded: 6-7-1917
Deed Type: Quit Claim Vol. 29 Pg. 212 CT Page 11662 Grantor: Norwich Savings Society Grantee: Paseka Kromore Date of Execution: 3-20-22 Date Recorded: 9-22-26
Deed Type: Warranty Vol. 31 Pg. 227 Grantor: Paseka Kromore Grantee: William Segar Date of Execution: 4-1-1930 Date Recorded: 4-5-1930
Deed Type: Cert. of Foreclosure Vol. 52 Pg. 20 Grantor: Est. of William Segar Grantee: Est. of Fred B. Clark Date of Execution: 3-22-58 Date Recorded: 3-21-58
Deed Type: Administratrix's Deed Vol. 52 Pg. 276 Grantor: Est. of Fred B. Clark Grantee: Henry Berube Date of Execution: 11-20-58 Date Recorded: 11-24-58
Deed Type: Warranty Vol. 51 Pg. 152 Grantor: Henry Berube Grantee: Helen S. Rutka Date of Execution: 8-12-59 Date Recorded: 10-23-59
Deed Type: Warranty Vol. 51 Pg. 508 Grantor: Helen S. Rutka Grantee: Zagerwood Incorporated Date of Execution: 6-25-63 Date Recorded: 7-6-63
Deed Type: Warranty Vol. 76 Pg. 698 Grantor: Zargerwood, Inc. Grantee: Germond, et al Date of Execution: 10-7-72 Date Recorded: 11-14-72
Deed Type: Warranty Vol. 76 Pg. 702 Grantor: Germond, et al Grantee: Ostrager, Carp, Fisher Date of Execution: 11-3-72 Date Recorded: 11-14-72
Attorney Johnson examined the Henderson map and concluded that it erroneously reflected the southern line, whereas a survey prepared by Paul Kaye i.e. exhibit 4 a, b and c verifies that the defendants have marketable title.
Exhibit 52 reflects a warranty deed from Henry Erlich to CT Page 11663 Daniel Brown, dated February 3, 1920 recorded in volume 30 page 461, Richard Johnson has indicated that the property is described as the "Gott Farms" and contains 260 acres; this same property is contained in a warranty deed from Daniel Brown and Celia Brown to L. B. Callahan, dated November 30, 1927 and recorded in volume 32 p. 389 and the same property was conveyed from L. B. Callahan to Eva Ostrager on August 27, 1934 and recorded in vol. 31 page 300. Mr. Johnson has indicated that the 66 acres in dispute is within the 260 acres.
There was then a foreclosure of the property in favor of the town of Hebron on February 15, 1944 and recorded in volume 40 page 553. The property is now described as 240 acres which is the greater part of the "Gott Farm". The next deed is a Quit Claim Deed from the Town of Hebron to Murray Ostrager, dated September 16, 1950 and recorded in volume 45 page 522, the "Gott Farm" is included in this transfer.
The defendants claim that the 1950 deed establishes a valid root of title under the Market Record Title Act, Connecticut General Statutes § 42-33c. This claim has been verified by Attorney Johnson. In his title search, Attorney Johnson, examined adjoining property and concluded that the plaintiffs do not have record title to the property in question.
The evidence as to record title was complicated and confusing. Some of the various deeds and maps were in conflict making it difficult to establish marketable title. Yet Mr. Johnson made an exhaustive title search and concluded that record title is in Murray and Seymour Ostrager by virtue of the deeds at volume 45 page 522 and volume 63 page 66 of the Hebron land records.
The court finds the testimony and conclusion of Attorney Johnson to be compelling and persuasive. By virtue of his testimony, other testimony and exhibits, the court concludes that the defendants have, by a preponderance of the evidence, established, that they are the record title owners of the disputed property.
 III
There was evidence presented regarding the value of the timber on the property in question. In this regard Mr. Thomas Casler was called to testify. CT Page 11664
Mr. Casler testified that he made an offer to purchase timber on 225 acres on Crouch Road for $80,000 from Murray Ostrager [exhibit J]. This is on land that is not in dispute [exhibit I]. There was an agreement dated January 3, 1995 relative to the property on the Kaye survey for a price of $121,000. Mr. Casler indicated that the value of the timber on the disputed property, is the difference between the two contracts or $41,000. Mr. Chanon, who was called by the defendants, placed a value on the timber in question to be $22,500. Mr. Chanon stated that he paid Murray Ostrager $125,000 for the timber and he allocated $22,500 for timber on the property in question. The court notes this testimony in that it shows that Murray Ostrager negotiated for the sale of timber.
 IV Adverse Possession
The court has found in favor of the defendants on count one in that it has determined that the record owners of the property in dispute are Murray and Seymour Ostrager.
The court must now examine and determine the plaintiffs claim of title by adverse possession, pursuant to count two of their complaint.
Section 52-575 Connecticut General Statutes entitled "Entry upon land to be made within fifteen years", provides in part:
 "No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues . . . and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards."
In Ruick v. Twarkins, 171 Conn. 149, 155, the Supreme Court stated:
"The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of his possession and kept out uninterruptedly for a period of fifteen years, by an open, visible and exclusive possession by the claimant without the license or consent of the owner and under a claim of CT Page 11665 right." Wadsworth Realty Co. v. Sundberg, 165 Conn. 457, 462, 338 A.2d 470. By such adverse possession, the true owner is barred by a statute of limitations; General Statutes § 52-575; from making entry into the subject lands.
Adverse possession must be proven by clear and positive proof, and is to be taken strictly. Roche v. Fairfield,186 Conn. 490, 498-99. In Roche v. Fairfield, the court stated at page 498:
 "Where title is claimed by adverse possession, the burden of proof is on the claimant. Loewenberg v. Wallace, 147 Conn. 689, 699, 166 A.2d 150 (1960). The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. Stevens v. Smoker, 84 Conn. 569, 574, 80 A. 788 (1911). The use is not exclusive if the adverse user merely shares dominion over the property with other users. Short Beach Cottage Ownes Improvement Assn. v. Stratford, 154 Conn. 194, 199, 224 A.2d 532 (1966). Such a possession is not to be made out by inference, but by clear and positive proof. Robinson v. Myers, 156 Conn. 510, 517, 244 A.2d 385 (1968). In the final analysis, whether possession is adverse is a question of fact for the trier. Padual v. Padula, 138 Conn. 102, 110.
The elements of adverse possession are questions of fact for the trial court, Lucas v. Crofoot, 95 Conn. 619, 623. Adverse possession allows for ownership in derogation of record title in that it presupposes title is in someone other than the claimant. Since the court has found that Murray Ostrager and Seymour Ostrager have established that they hold record title of the property in dispute, and that this court has found that the plaintiffs' have not sustained their burden of proof by a preponderance of the evidence as to the issue of record title, the court proceeds with the issue of plaintiffs' adverse possession claim on the basis that Murray Ostrager and Seymour Ostrager have record title.
The requirement that an adverse possession be "notorious" means that the use by the claimant be known or well known.Robinson v. Myers, 156 Conn. 510. This reason is to give actual notice to an owner that a claim contrary to his ownership is CT Page 11666 being asserted or to establish a foundation for a finding of constructive notice. The posting of "no trespassing" signs can be evidence of this element. Meshberger v. Bridgeport City TrustCo., 1 Conn. App. 10, 467 A.2d 685 (1983).
Entry cannot be of a casual or secret character but must be either known to an owner or be made under such circumstances as to enable an owner, by the use of reasonable diligence, to ascertain the claim of the party making the entry, and thus enable him to resort to legal remedies for its protection.
In evaluating whether certain uses are sufficient to establish a claim of ownership by adverse possession, the location and condition of the land must be taken into consideration, and the alleged act of ownership must be understood as directed to those circumstances and conditions. Utilization of a wooded area for precisely the use to which it is best suited, may demonstrate a claim of adverse possession.
Roche v. Fairfield, supra, at page 502, defines the "exclusivity" element of an adverse possession claim as follows: "In general, exclusive possession can be established by acts which at the time, considering the state of the land, comport with ownership; viz., such acts as would ordinarily be exercised by an owner in appropriating land to his own use and the exclusion of others." "Thus, the claimant's possession need not be absolutely exclusive; it need only be a type of possession which would characterize an owner's use."
The claimant's possession of the disputed land must be without license or consent of the owner. "Occupation must not only be hostile in its inception, but it must continue hostile, and at all times during the required period of fifteen years challenge the right of the true owner, in order to found title by adverse use upon it." Paton v. Robinson, 81 Conn. 547, 551.
The intent of the possessor to use the property as his own must be shown as an element of adverse possession. Horowitz v.F.E. Spencer Co., 132 Conn. 373. A mistaken belief by the adverse possessor that he owned the property when he entered into possession is immaterial in an action for title by adverse possession. Paletsky v. Paletsky, 3 Conn. App. 587. Specific intent to deprive the record title holder of his property is not required. Public Storage. Inc. v. Eliot Street LimitedPartnership, 20 Conn. App. 380. CT Page 11667
In the instant case, the plaintiffs' claim in the alternative that they have title by adverse possession. Specifically the plaintiffs' assert in paragraph twelve of the second count as follows: "The plaintiffs and their predecessors in title have used and enjoyed the real property . . . for more than fifteen years prior to the commencement of this action and such use and possession has been, at all times, open, visible, notorious, adverse, exclusive, continuous, uninterrupted and under a claim of right, and the plaintiffs and their predecessors in title have thereby acquired, and the plaintiffs now have sole and exclusive title to the real property."
William Zagray testified as to his claim of adverse possession. Mr. Zagray stated that he is 78 years old, that he was born on a farm in Colchester which is south of the property in question and that his parents owned the farm. He indicated that he left high school in 1938 and in 1938-39, he worked the farm full time, which involved plowing the land in question which was pasture land. Also the pasture land was partially fenced and that there was a roadway near the easterly line for a horse and wagon. Mr. Zagray lived on the farm all his life.
Mr. Zagray indicated that he has always heated his house with wood which came from trees he cut down on the disputed property. He first used a horse and wagon, then a truck, a 1935 Chevrolet, to remove the trees from the property in question.
Fires occurred on the disputed property caused by the railroad and Mr. Zagray stated he would go onto the property with "Indian water pumps" and extinguish the fires. From 1940 to 1950 there were approximate ten fires and from 1950 to 1960 about two or three fires.
William Zagray stated that he trapped and hunted on the disputed property up to 1994. Also that he is a member of the Colchester Fish and Game Club since 1937 and that he gave the club permission to use the property. The property was stocked by the club. Mr. Zagray also gave hunters permission to hunt on the property (exhibits O and P).
Mr. Zagray testified he would post "no trespassing" signs from 1930 to 1995 and when the signs were down he would replace them. In substantiation of the latter, the plaintiffs' presented testimony of Connecticut State Trooper Jazwinski, who stated that CT Page 11668 on January 7, 1995, he responded to a complaint lodged by William Zagray, that people were cutting on an unimproved area claimed to be owned by William Zagray. The trooper indicated that he saw "no trespassing" signs claimed to be placed by William Zagray. Some of the posted signs have the name Zagray on them (exhibits Q[1] and Q[2]).
In this regard, John Skeet testified on behalf of the plaintiffs and indicated that he was a member of the Colchester Fish and Game Club since the late 1930s and that he hunted on the Zagray property up to about 1984. In the late 1930s the club had 25-30 members. The members hunted on the property in question and also posed "No Trespassing" signs, exhibit Q-3.
The plaintiffs also presented the testimony of Russell Blow. Mr. Blow stated that in the late 60s and early 70s he was given written permission to hunt on the property in question. Mr. Blow has hunted on the property up to the present time pursuant to written permission (exhibit O). Russell Blow also indicated that William Zagray showed him the boundaries of his land. Also Mr. Blow saw the "No Trespassing" and posted signs on the property. Mr. Blow testified referring to exhibit T and identified the property in question as belonging to the plaintiffs. Also that he saw William Zagray on the property on a regular basis in that William Zagray maintained the property.
George Champlin also testified that he hunted the property since the mid 70s and that as to the property in question, the boundaries were marked by "posted" signs. Mr. Champlin received written permission to hunt the property from William Zagray.
Raymond Schmidt of 118 Crouch Road, Hebron testified that he purchased his lot from Murray Ostrager in 1988. Mr. Schmidt called William Zagray by telephone and was told that Mr. Zagray owned property to the northeast of said property. Said property also was marked by "posted signs", exhibit W-3.
In an attempt to refute the plaintiffs' claim of title by adverse possession, the defendants presented the testimony of a number of witnesses including that of Murray Ostrager.
Mr. Ostrager indicated that he grew up on New York city, and spent summers in Connecticut because his grandfather had a farm in Hebron. Then Murray Ostrager's mother purchased property in Hebron in 1934. CT Page 11669
Mr. Ostrager left high school in 1938 and held various jobs up to 1944. He subsequently obtained a real estate license in New York and in Connecticut in 1963.
Murray Ostrager's mother purchased property known as the "Gott Farm" in 1934 and Murray Ostrager now went to this property instead of his grandfather's property. Murray Ostrager walked the property with a neighbor who was familiar with the boundary lines.
Murray Ostrager indicated that the northeast portion of the property was very wooded and that there was no pasture land. Murray Ostrager walked the property with his brother Syd and cousins to look for property lines.
Murray Ostrager claims that in 64 years he saw no signs of activity on the property.
As to the allegations that he offered to purchase the property in question from the plaintiffs Mr. Ostrager indicated that he did offer to purchase property from the plaintiffs but not the property in dispute. Exhibit 74, is a letter dated October 24, 1963 from Murray Ostrager to William Zagray. The letter proposed a survey to ". . . establish your boundary and my boundary" . . . Mr. Ostrager proposed that the survey cost of $3,000 be paid $2,000 by Murray Ostrager and $1,000 by William Zagray.
Mr. Ostrager testified that he negotiated to sell the property in question, along with other property to a Baruch Gettelrer in 1973 (exhibit 75). In this regard a survey was discussed to be done by Paul Kaye. The proposed sale was not consummated. At any rate Murray Ostrager ordered an A-2 survey from Mr. Kaye and the survey was filed in the Hebron Assessor's Office.
Murray Ostrager acknowledged that he did see some Colchester Fish and Game Club signs, this caused him to have his attorney send a letter to the Colchester Fish and Game Club. Said letter is dated January 14, 1975 and states that the Club may have received permission from William Zagray to use the property however, William Zagray does not own the property south of Crouch Road and any use of the property should be taken up with Murray Ostrager. Murray Ostrager stated that he was not contacted by the CT Page 11670 Club in this regard.
Murray Ostrager entered in a contract with Joel Chanon, dated January 3, 1995 (exhibit FF) relative to the removal of timber on property including the disputed property and it was when Mr. Chanon came onto the property to remove trees that Mr. Zagray became upset and called the state police. Subsequent to discussions with the state police on the premises, the tree removal continued.
Allan Baner, was called by the defendants, he indicated that he hunted on the property in question for 8-9 years with permission from Murray Ostrager and that Murray Ostrager showed him where to hunt near Crouch Road. Mr. Baner indicated that he saw no "no trespassing signs" near Crouch Road.
A Mr. William Hoar testified that he purchased a home from Murray Ostrager on Crouch Road. Mr. Hoar indicated that he was given permission by Murray Ostrager to take fallen wood from fallen trees on the disputed property near Crouch Road in 1984. He also stated he saw no "no trespassing signs".
Mr. Norman Legault rented Murray Ostrager's mothers house in 1970 and claims he hunted in an area near the railroad tracks and saw no "no trespassing signs".
Nettie Goldstein, who is the sister of the defendants testified that she vacationed on the property and walked the property from 1937 to the early 40s. She walked the property with her brothers and sisters. She indicated the property was not pastureland, that she saw no evidence of livestock and she never saw the plaintiffs on the property.
Seymour Ostrager, is the brother of Murray Ostrager and Nettie Goldstein. His testimony confirmed their testimony. He stated that the land in question is wooded and he did not see animals being pastured there nor did he see William Zagray on the property.
 V Requisites of Adverse Possession
The plaintiff must establish by clear and positive proof that the owners of the disputed property are ousted of possession and CT Page 11671 kept out uninterruptedly for a period of fifteen years, by open, visible and exclusive possession without the consent of the owners.
The plaintiffs have asserted that they have used the property in question in connection with their farm. That they pastured the land, hunted on it and gave permission to others to hunt on it. These assertions were refuted by the defendants who claim that the property is heavily wooded and that they also gave permission to individuals to hunt. The Zagrays also indicated that they cut wood for firewood. That the firewood was removed by tractor and four wheel drive vehicles. Mr. Zagray also testified that he saw fires on the property, that the fires were associated with the railroad. With the aid of Indian pumps he would extinguish the fires.
The defendants claim that at an early age they, with family and friends walked on the disputed property and also picked berries. The defendants also assert that they had not seen the plaintiffs on the disputed property.
Murray Ostrager stated he was approached by foresters, who made offers to timber the property and in fact a contract for timbering was entered into with a Joel Chanon.
In furtherance of his discussion with Murray Ostrager, Joel Chanon. "cruised" the property in 1989, which process took seven to eight days. Mr. Chanon used an assessor's map and the A-2 survey when he "cruised" the property and marked the trees. In his negotiations with Murray Ostrager, Mr. Chanon asked Murray Ostrager for an indemnity agreement which became part of the contract.
The plaintiffs must establish that the defendants were ousted of possession in a defined area. The plaintiffs claim that the posting of "no trespassing' signs is significant in establishing adverse possession. However, some of the signs were the signs of the Colchester Fish and Game Club and placed by them. The signs were so placed that no defined area can be established. On this question of the signs, Murray Ostrager stated he also placed signs on the property near Crouch Road.
Furthermore, Murray Ostrager had a letter sent by his attorney to Colchester Fish Game Club (exhibit K) that stated:
CT Page 11672 Gentlemen:
 We have been advised by our client, Murray Ostrager, who owns land on the south side of Crouch Road in Hebron that your club has used or been given permission to use for the purposes of your club said property of Mr. Ostrager presumably under the permission of or lease from William Zagray. We wish to advise you that Mr. Zagray does not own said property on the south side of Crouch Road and that any use of said property would constitute a trespass and be unlawful. Any desire by your club to use said premises should be taken up with Mr. Ostrager. We would be happy to assist you in determining for your club where the boundary lines are.
Very truly yours,
J. Roger Hanlon
The result of the testimony of William Zagray and Murray Ostrager is that it appears that both men exercised control over the land in dispute. Thus the court finds that there has been a concurrent possession of the property.
The evidence would indicate that Murray Ostrager exercised a degree of control and dominion over the property. Therefore, it cannot be concluded that the plaintiffs have maintained exclusive possession over the property. Moreover the defendants have not been ousted from the property in that they exercised a degree of control over it. Accordingly, the court must conclude that the plaintiffs have not established the requirements of adverse possession to deprive the defendants of their title to this property.
While the plaintiffs presented a skillful case for adverse possession, it falls short of meeting the heightened standard of proof of clear and positive evidence. Therefore, the plaintiffs have not proven that they are entitled to the disputed property by adverse possession.
 Conclusion
This case was contested by able and experienced counsel. Many facts were developed bearing on the issues before the court. Yet from a careful examination of all the evidence, the court is unable to find facts proven which would reasonably lead to the CT Page 11673 conclusion that the plaintiffs are entitled to the property in dispute under the doctrine of adverse possession.
The defendants have proven by a preponderance of the evidence that they have marketable title to the property in dispute and the court so finds.
Adverse possession must be proven by clear and positive proof and is to be taken strictly. The plaintiffs have not met their burden of proof that they are entitled to the property under the doctrine of adverse possession.
Stengel, J.